UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81163-CIV-MARRA/HOPKINS

PETER COPPOLA,

        Plaintiff,

v.

CASARO LABS, LTD.,
SAMUEL LUBLINER,
RODNEY VICCARI, and
STANCE BEAUTY LABS, LLC,

        Defendants.
_____/

## MOTION TO ENFORCE SETTLEMENT AGREEMENT
## AND REQUEST FOR EXPEDITED DISPOSITION

Defendants, Casaro Labs, Ltd., Samuel Lubliner, Rodney Viccari and Stance Beauty Labs, LLC, respectfully move this Court to enforce the Settlement Agreement entered into by the parties on March 6, 2014, and for expedited disposition of same, and as grounds therefore state:

### Plaintiff is Attempting to Renege on a Settlement Agreement Reached in this Case

This case has settled. The parties' settlement is memorialized by correspondence reflecting that they agreed to the material terms of a comprehensive resolution of this dispute. Unfortunately, Plaintiff is now trying to renege on the agreement and Defendants have no choice but to seek the Court's intervention. The relevant facts are as follows:

In October 2008, Plaintiff expressly authorized Casaro Labs to manufacture and sell PETER COPPOLA hair care products pursuant to a five-year licensing agreement. Plaintiff initiated this action on October 22, 2012, alleging the following claims: (1) breach of license agreement; (2) trademark infringement under the Lanham Act; (3) unfair competition; and (4)

accounting.  The parties attended mediation on January 20, 2014, which resulted in an impasse. Despite the impasse, the parties continued their settlement negotiations after mediation, as reflected in Plaintiffs' Motion for Order Extending Deadline for Expert Disclosures.  *See* D.E. #42 at ¶ 4 ("Since the entry of the Order Resetting Deadlines, the parties have continued ongoing settlement negotiations and have been hopeful that the parties may reach an agreement.").  Those negotiations took place through various e-mail communications between Plaintiff's counsel, Mr. Ronald D'Anna, Esq., and Defendants' counsel, Ms. Vanessa M. Serrano, Esq., from February 12, 2014 through March 6, 2014.

On March 5, 2014, Plaintiff sent Defendant a counteroffer[1] requiring a lump sum payment of $275,000, in addition to the terms already agreed to by the parties throughout the negotiations.  *See* **Exhibit A**.  Defendant's counsel called Plaintiff's counsel on March 6, 2014 to accept those terms with a minor adjustment -- $250,000 would be paid 5 days after the execution of collateral documents further memorializing the settlement terms and $25,000 would be paid 120 days later.  To ensure that all parties were on the proverbial "same page," Defendant's counsel also confirmed that the products to be sold and geographic scope were the same that were previously sold by Casaro Labs under license from Coppola.  Those terms were accepted by Plaintiff's counsel on the telephone call and were then confirmed by Defendants' counsel in the following e-mail with a subject line of "***confirming settlement***":

---

[1] The e-mail string attached as Exhibit A is just one of several e-mails containing offers and counteroffers between the parties from February 12, 2014 through the March 6th Settlement. Defendants can provide the balance of the e-mails should the Court request or require them.

> *Ron,*
>
> *As discussed, the settlement will be for $250,000 payable 5 days after signing the documents and $25,000 120 days later. The royalty will be 7% and the agreement will run 16 months. The agreement will specify that all products being sold by Casaro (including those Plaintiff contends are outside of the scope) are acceptable (i.e., hair brushes, thermal pouches, etc.) and that the geographic scope remains the same with the exception of TJK-TJ Maxx European division. Our clients will withdraw the TM application and will waive their claim for the 4% fee. All parties will agree to a full mutual release (excluding the "new" license agreement).*
>
> *<u>**Please confirm we have a deal**</u>.*
>
> *Thank you,*
>
> *Vanessa*

See **Exhibit B** (emphasis supplied). Plaintiff's counsel confirmed the settlement by responding "<u>**Agreed**</u>." See **Exhibit C** (emphasis supplied). This e-mail exchange and the terms therein are referred to hereinafter as the "March 6th Settlement."

On March 13, 2014, in furtherance of the March 6th Settlement, Defendants sent Plaintiff a draft Trademark License Agreement *via* e-mail. See **Exhibit D**. Plaintiff ignored that email. Defendants followed up with another e-mail on March 19, 2014, resending the draft Trademark License Agreement and also including, again in furtherance of the March 6th Settlement, a draft Settlement Agreement and Mutual General Release. See **Exhibit E**. Together, the draft Trademark License Agreement and draft Settlement Agreement and Mutual General Release are collateral documents further memorializing the settlement the parties had reached on March 6th. Plaintiff ignored Defendants' March 19th email just as they had Defendants' March 13th email.

Regrettably, on March 21, Plaintiff attempted to alter the material payment terms of the March 6th Settlement by increasing the lump sum settlement amount from $275,000 to $350,000, and decreasing the royalty from 7% to 6%. *See* **Exhibit F**. That attempt was rejected by Defendants, who remain willing, ready and able to abide by the terms of the March 6th Settlement. *See* **Exhibit G**. This Motion, which seeks to enforce the terms of the March 6th Settlement, now follows.

## Argument

Simply put, the parties agreed to be bound by the terms of the March 6th Settlement, which should now be fully enforced. "A district court has jurisdiction to enforce settlement agreements when one party refuses to abide by the agreement prior to dismissal." *Le Bon Pain, Inc. v. Guyon and Co., Inc.,* 720 F. Supp. 983, 984–85 (S.D. Fla. 1989) (*citing Kent v. Baker, III*, 815 F.2d 1365, 1398 (11th Cir. 1987)); *Ford v. Citizens and Southern National Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991) (discussing district court's inherent power to enforce settlement agreements). Indeed, "the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, and the exercise of that power is entrusted to the court's sound discretion." *South Beach Suncare, Inc. v. Sea & Ski Corp.*, Case No. 98–1114–CIV–MORENO, 1999 WL 350458, at *6 (S.D. Fla. May 17, 1999).

The construction and enforcement of settlement agreements are governed by principles of Florida's general contract law. *Schwartz v. Fla. Bd. of Regents,* 807 F.2d 901, 905 (11th Cir. 1987) (*citing Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985)). Florida applies an "objective test" to determine whether a contract, or a settlement, may be duly enforced. *See Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985) (noting that the test considers not whether there was an "agreement of two minds in one intention, but on the agreement of two sets of external

4

signs—not on the parties having meant the same thing but on their having said the same"); *see also Schwartz*, 807 F.2d at 905 ("The court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement"). To determine whether there exists an enforceable contract, courts look to traditional notions of offer and acceptance and to basic contract law. *See Robbie,* 469 So. 2d at 1385.

Importantly, preparation and execution of the settlement agreement is not a condition precedent to a settlement agreement, but merely a procedural formality. *See U.S. ex rel. Osheroff v. MCCI Group Holdings,* LLC, No. 10-24486-cv-SCOLA, 2013 WL 3991964 *6 (S.D. Fla. Aug. 2, 2013) (internal citations omitted). Moreover, uncertainty as to nonessential and ancillary terms will not prevent enforcement of a settlement. *Carpaneda v. Quayside Place Partners, LLP*, No. 09-20740-CIV-SEITZ, 2010 WL 2696958 *2 (S.D. Fla. July 7, 2010) (*citing Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2003)). This is consistent with the fact that "[s]ettlement agreements are highly favored, and will be enforced whenever possible." *Robbie*, 469 So. 2d at 1385; *Murchison v. Grand Cypress Hotel Corp.,* 13 F.3d 1483, 1486 (11th Cir.1994) ("We favor and encourage settlements in order to conserve judicial resources").

In a case similar to this one, *Warrior Creek Dev., Inc. v. Cummings*, 56 So. 3d 915, 917 (Fla. 2d DCA 2011), the parties, through their attorneys, agreed to settle all claims between them. *Id*. at 916. The essential and material terms of the settlement were set forth in a detailed e-mail sent by one attorney to the other, which was agreed to by the other. *Id*. The terms of the settlement anticipated the preparation and execution of collateral documents. *Id*. "Although all essential and material terms of the settlement agreement were addressed in the e-mail, the

5

attorneys thereafter agreed to draft a separate written settlement agreement to be included in the package of settlement documents." *Id*. When one of the attorneys later reported, "the deal is off," the other side moved to enforce the settlement agreement. *Id*.

The trial court disagreed with the respondents' position that the e-mail was merely a preliminary negotiation of the agreement and determined that the essential and material terms of the settlement were reflected in the e-mail. The trial court further concluded that the respondents' effort to revoke the settlement was thus ineffective because they had already agreed to the essential and material terms for settlement. *Id*. Affirming, the Florida appellate court stated:

> **The trial court correctly applied the law to the evidence in finding that the parties had agreed upon all of the essential and material terms for settlement and that those terms were reflected in the November e-mail.** *See Don L. Tullis & Assocs., Inc. v. Benge,* 473 So.2d 1384, 1386 (Fla. 1st DCA 1985) (explaining that "[t]o be enforced, the [settlement] agreement must be sufficiently specific and mutually agreeable on every essential element").

*Id*. (emphasis supplied).

Indeed, there is a litany of cases within the Eleventh Circuit where district courts enforced settlements reached by the parties' through emails and other written correspondence exchanged between their respective lawyers.. *See e.g., Sands v. Wagner & Hunt, P.A.*, No. 09-60557-CIV-DIMITROULEAS/SELTZER, 2009 WL 2730469 (S.D. Fla. Aug. 28, 2009) (report and recommendation to enforce settlement confirmed through e-mails between the parties' counsel; affirmed by Order Adopting Report and Recommendations dated Sept. 16, 2009); *Miles v. Northwestern Mut. Life Ins. Co.*, 677 F.Supp.2d 1312 (M.D. Fla. 2009) (enforcing settlement reached between parties' counsel through e-mails); *Terra-ADI Int'l Dadeland, LLC v. Zurich American Ins. Co.*, No. 06-22380-CIV-HUCK, 2007 WL 2460744 (S.D. Fla. Aug. 24, 2007)

(same); *In re Rolsafe Int'l, LLC*, 411 B.R. 884 (Bankr. M.D. Fla. 2012) (same); *BP Products North America, Inc. v. Oakridge at Winegard, Inc.*, 469 F.Supp.2d 1128 (M.D. Fla. 2007) (settlement reached via telephone and confirmed via e-mail); *Austin v. Spirit Airlines, Inc.*, No. 08-60540-CIV-COHN, 2008 WL 4927003 (S.D. Fla. Nov. 17, 2008); *Vital Pharmaceuticals, Inc. v. S.A.N. Nutrition Corp.*, No. 06-60646-CIV-COHN, 2007 WL 1655421 (S.D. Fla. June 6, 2007) (enforcing settlement reached between parties' counsel through e-mails).

Here, the parties agreed to all of the material terms of settlement via the March 6th e-mail exchange, Exhibit C hereto. Those terms include: (1) the payment amount and terms (i.e., total payment of $275,000 -- $250,000 to be paid 5 days after execution of the settlement documents and $25,000 paid 120 days later), (2) the length of the "new" license agreement (i.e., 16 months), (3) the royalty amount under the "new" agreement (i.e., 7%), (4) the products to be authorized under the "new" license agreement (i.e., "all products being sold by Casaro (including those Plaintiff contends are outside of the scope) are acceptable (i.e., hair brushes, thermal pouches, etc.)"), and (5) the geographic scope of the "new" license (i.e., "the geographic scope remains the same with the exception of TJK-TJ Maxx European division"). In addition, Defendants agreed to withdraw their pending trademark application for PETER COPPOLA NEW YORK and to waive their claim against Plaintiff for a 4% "reverse" royalty set forth in the existing license agreement. Finally, the parties agreed to a full mutual release, exclusive of the "new" license agreement.

It is indisputable that the parties reached a meeting of the minds on the essential, material terms set forth above. Plaintiff's "*agreed*" e-mail response, *see* Exhibit C, was an unequivocal acceptance of those terms and mandates the enforcement of the March 6th Settlement.

7

Consistent with the vast precedent cited above, this Court should exercise its broad authority to require Plaintiff to abide by the terms of the March 6th Settlement and dismiss this action.

### Request for Expedited Disposition

The original license agreement between Coppola and Casaro Labs expired by its natural terms on October 2, 2013.  As discussed above, the March 6th Settlement includes a "new" license agreement, whereby Casaro Labs can continue to sell the subject hair care products; however, Plaintiff is refusing to comply or acknowledge the March 6th Settlement Agreement. The longer this dispute continues, the greater the likelihood that Casaro Labs will be unable to re-engage its clients, thereby nullifying a key component and the intent of the March 6th Settlement (i.e., the continuation of Casaro Lab's sale of the PETER COPPOLA NEW YORK hair care products).  Casaro Labs therefore respectfully requests that the Court require expedited briefing and consideration of this Motion.

### Conclusion

As established above, the parties reached a binding settlement of this case on March 6, 2014.  The Court should compel Plaintiff to: 1) comply with the March 6th Settlement, 2) finalize and execute the collateral documents anticipated by the settlement, including the Trademark License Agreement and Settlement Agreement and Mutual Release,  3) dismiss this action; and 4) retain jurisdiction to enforce the settlement.

WHEREFORE, Defendants, Casaro Labs, Ltd., Samuel Lubliner, Rodney Viccari and Stance Beauty Labs, LLC, respectfully request that the Court grant this Motion to Enforce Settlement and grant such other and further relief as the Court deems proper.

Dated:  March 28, 2014

        Respectfully submitted,

        By:__/s/ Vanessa M. Serrano_____
           MATTHEW S. NELLES
           Florida Bar No. 009245
           mnelles@broadandcassel.com
           VANESSA M. SERRANO
           Florida Bar No. 51555
           vserrano@broadandcassel.com
           BROAD & CASSEL
           One Financial Plaza, Suite 2700
           100 S.E. Third Avenue
           Fort Lauderdale, Florida  33394
           (954) 764-7060
           (954) 761-8135 (fax)

           *Attorneys for Defendants*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that pursuant to S.D. Fla. Local Rule 7.1(3)(A), the undersigned counsel conferred in good faith with Ronald D'Anna, Esq., counsel for Plaintiff, on March 26, and March 27, 2014, to resolve without court action the issues raised in the foregoing Motion to Enforce Settlement Agreement. The parties were unable to reach an agreement, necessitating the filing of this Motion.

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on the 28th day of March, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the following Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Vanessa M. Serrano_____
VANESSA M. SERRANO

## SERVICE LIST

Ronald E. D'Anna, Esquire
McClosky, D'Anna & Dieterle, LLP
2101 N.W. Corporate Boulevard, Suite 400
Boca Raton, Florida 33431
Phone: (561) 368-9200
E-mail: red@mdd-law.com

4845-0231-9385.3
47594/0001 VMS vms