UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-81163-CIV-MARRA

PETER COPPOLA,

        Plaintiff,

v.

CASARO LABS, LTD.,
SAMUEL LUBLINER,
RODNEY VICCARI, and
STANCE BEAUTY LABS, LLC,

        Defendants.
_____/

**PLAINTIFF, PETER COPPOLA'S OBJECTIONS TO REPORT
AND RECOMMENDATION ON DEFENANTS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT (DE 44) [Doc. 57]**

Plaintiff, Peter Coppola ("Coppola"), by and through his undersigned counsel, hereby objects to Magistrate James M. Hopkins' Report and Recommendation on Defendants' Motion to Enforce Settlement Agreement (DE 44) [Doc. 57] entered on April 21, 2014, and states as follows:

**PROCEDURAL BACKGROUND AND INTRODUCTION**

1.    On March 23, 2014, Defendants filed a Motion to Enforce Settlement Agreement [Doc. 44] ("Motion to Enforce").

2.    On April 10, 2014, Plaintiff filed his Response in Opposition to Defendants' Motion to Enforce Settlement Agreement [Doc. 49] ("Response in Opposition")

3.    On April 15, 2014, Plaintiff filed his Supplement to Legal Memorandum included in Plaintiff's Response in Opposition Defendants' Motion to Enforce Settlement Agreement and Incorporated Memorandum of Law [Doc. 51] ("Supplement").

4. Also on April 15, 2014, Defendants filed their Reply to Plaintiff's Response in Opposition [Doc. 52] ("Reply").

5. It is undisputed that the purported settlement agreement which is the subject matter of the present dispute and which is thoroughly addressed in the foregoing moving papers involves two material components: (1) a payment by the Defendants to the Plaintiff and (2) an intention to enter into a license agreement by which Peter Coppola would grant the Defendant, Casaro Labs, Ltd., the license to sell and distribute products with the trademark, "Peter Coppola".

6. Additionally, on April 16, 2014, Plaintiff filed a Motion to Continue the Evidentiary Hearing Scheduled for April 17, 2014 Regarding Defendants' Motion to Enforce Settlement Agreement [Doc. 53] ("Motion to Continue"), which the Magistrate Judge subsequently denied [Doc. 54] stating "ORDER denying [53] Plaintiff's Motion to Continue Evidentiary Hearing set for 4/17/14. Should a continuation become necessary for the purpose of allowing additional witnesses who are unavailable, the Court will set a continuation of the hearing for a later date."

7. The basis for Plaintiff's Motion to Continue was, *inter alia*, that a material witness to support Plaintiff's position, Alan Fisher, was out of town in Boston, MA, for the Passover holiday.

8. As stated in the Motion to Continue, "Mr. Fisher is a material witness because his representations and communications with both the Plaintiff, Peter Coppola, and with Plaintiff's counsel, Ronald D'Anna, Esquire, form the basis of Mr. Coppola's and Mr. D'Anna's understandings with respect to who had authority to enter into any settlement agreement on behalf of the Plaintiff." [Doc. 53 at ¶ 11].

9. On April 17, 2014, the evidentiary hearing as to Defendants' Motion to Enforce Settlement Agreement [Doc. 44] went forward. The two witnesses who testified were Plaintiff's witnesses: Yosef Davidson and Peter Coppola.

10. On April 21, 2014, the Magistrate Judge entered his Report and Recommendation on Defendants' Motion to Enforce Settlement Agreement (DE 44) [Doc. 57] ("Recommendation").

11. As pointed out in the Magistrate's Recommendation, a major issue of his determination was whether or not the Plaintiff, Peter Coppola, or Plaintiff's counsel, Mr. D'Anna, had actual authority to enter into any settlement agreement with the Defendants.

12. It is undisputed that both Mr. Coppola and Mr. D'Anna believed they had full authority to settle this case based on certain explanations and assurances by Alan Fisher, Esquire.

13. However, neither Mr. Coppola nor Mr. D'Anna had actual authority to enter into a settlement agreement with the Defendants for reasons which will be further explained.

14. Furthermore, a salient issue which was overlooked by the Magistrate Judge was that while Peter Coppola believed he had full rights to settle this lawsuit and enter into a prospective licensing agreement, he, in fact, had sold some of the rights to this lawsuit and sold all rights to the Peter Coppola trademark to a company, Peter Coppola Beauty LLC.

**The Magistrate's Recommendation and Related Facts**

The Recommendation acknowledges that "Plaintiff entered into an Intellectual Property Purchase Agreement ("IP Agreement") with Peter Coppola Beauty, LLC, whereby Plaintiff agreed to sell the LLC his rights in the Peter Coppola trademark (DE 55)." [Doc. 57 at p. 2]. The Recommendation further acknowledges that the two companies that comprise Peter Coppola Beauty LLC are Beauty Investors Group, LLC ("Beauty Group") and The Davidson Group, LLC

3

("Davidson Group"), which companies are the signatories to the Limited Liability Company Operating Agreement of Peter Coppola Beauty LLC ("PCB Operating Agreement"). *Id*. Both the IP Agreement and the PCB Operating Agreement were admitted into evidence at the evidentiary hearing on April 17, 2014 through the testimony of Yosef Davidson. A true copy of the IP Agreement is attached hereto as Exhibit "A." A true copy of the PCB Operating Agreement is attached hereto as Exhibit "B."

Peter Coppola and his business partner/attorney, Alan Fisher, Esquire, are the principals of Beauty Group. Mr. Fisher does not have direct experience in the hair care industry and serves in more of the business/financial aspects of Beauty Group and negotiates most of the business deals on behalf of Beauty Group, while Mr. Coppola has the industry experience and product knowledge but not necessarily the business acumen for making negotiating deals. If Mr. Fisher would have been available to testify on April 17, 2014, he would have testified to this effect.

The Recommendation states that "at no point did any of the individuals or entities involved in the above-mentioned companies seek to participate in the litigation." [Doc. 57 at p. 2]. However, there was no obligation for any intervention in the litigation. More importantly, Yosef Davidson testified at the hearing on April 17, 2014, that in October 2013, Mr. Davidson affirmatively told Defendants, Samuel Lubliner and Rodney Viccari, the principals of Casaro Labs, Ltd., that the Davidson Group would have to approve any settlement agreement and license agreement. In fact, Mr. Davidson's testimony was that he had multiple communications with Mr. Lubliner and Mr. Viccari involving negotiations with respect to a potential continued licensing relationship for the Peter Coppola trademark, so the Defendants were well aware prior to settlement negotiations that other parties held the rights to any settlement and the ownership of the trademark.

As to the actual ownership of the Peter Coppola trademark, the IP Agreement, which Mr. D'Anna received for the first time on April 16, 2014, the day prior to the evidentiary hearing, includes the following recitals and provisions:

> WHEREAS, in connection to the Business, the Purchaser desires to obtain right, title and interest to certain intellectual property (the "Intellectual Property") consisting of any trademark, service mark, registration thereof or application for registration therefore, trade name, license, invention, patent, patent application, trade secret, trade dress, know-how, copyright, copyrightable materials, copyright registration, application for copyright registration, software programs, data bases, the "Peter Coppola" name and all abbreviations and derivations thereof, URLs (Uniform Resource Locators), and any other type of proprietary intellectual property right, and all embodiments and fixations thereof and related documentation, registrations and franchises and all additions, improvements and accessions thereto, and in all such cases, which is owned or licensed or filed by the Seller or used or held for use in the Business, whether registered or unregistered or domestic or foreign;
>
> WHEREAS, the Seller is engaged as a plaintiff (the "Plaintiff') in the trademark infringement litigation currently pending in the United States District Court, Southern District of Florida entitled Peter Coppola v. Casaro Labs, Ltd., Samuel Lubliner, and Rodney Viccari and bearing case no. 9.12-cv-81163-KAM (the "Litigation"); and
>
> WHEREAS, Seller wishes to sell, transfer and assign to Purchaser, and Purchaser wishes to purchase and accept the transfer and assignment from Seller, of all Seller's right, title and interest in and to the Intellectual Property, and any and all damages obtained by the Plaintiff in the Litigation that are found to accrue from and after the Effective Date, upon the terms and conditions herein set forth.
>
> 1. <u>Purchase And Sale; Purchase Consideration</u>.
> (a) Purchase and Sale. Seller hereby sells, assigns and transfers to Purchaser contemporaneously with the execution of this Agreement (the "Closing"), all rights, title and interests in and to the Intellectual Property and any and all damages obtained by the Plaintiff in the Litigation that are 5ond to accrue from and after the Effective Date (collectively, the "Purchased Assets"). Seller shall retain all judicial awards for damages arising from the Litigation

5

>prior to the Effective Date, and such judicial awards for damages shall not be a part of the Purchased Assets.
>
>…
>
>3. <u>Post-Closing Obligations</u>
>
>…
>
>(b) Cessation of Use of Purchased Assets. From and after the Closing Date, Seller shall permanently cease and desist from any further use of the Intellectual Property, whether directly or through any affiliate, licensee or other third party, and shall not, whether directly or through any affiliate, licensee or other third party, adopt or use any mark confusingly similar to any trademark, or produce any product using a recipe or formula that is substantially similar to any recipe, or using any trade dress, works of authorship or designs that is confusingly or substantially similar to any of the Intellectual Property…
>
>(f) Special Matters with Respect to Litigation. Should the Managers of the Purchaser desire to discontinue the Litigation and Plaintiff disagrees, Alan J. Fisher, as a manager of the Purchaser, will decide in the best interests of the Purchaser whether or not to do so and under what terms if discontinued.

The IP Agreement included an executed Intellectual Property Assignment as Exhibit A to the IP Agreement.

Accordingly, as of June 1, 2013 (the "Effective Date" of the assignment), Peter Coppola no longer owned the trademark, "Peter Coppola." Regardless, of Mr. Coppola's belief at the time he was negotiating the settlement with the Defendants herein, Mr. Coppola did not, in fact, own the trademark which was the subject matter of the anticipated license agreement at the time of the purported settlement agreement which Defendants allege occurred on March 6, 2014.

Both at the evidentiary hearing on April 17, 2014 and in the Magistrate's Recommendations, much emphasis was placed on Mr. D'Anna's emails communications and statements with respect to his apparent authority to bind his client to a settlement agreement. This focus misses the point. Mr. D'Anna does not dispute that he believed he had authority to bind his client, Peter Coppola, because Peter Coppola, himself, believed that he had the sole

6

authority to settle this case including the authority to enter into a further license agreement with Casaro Labs, Ltd. as part of the settlement.  As stated at the evidentiary hearing, it was not until March 19, 2014, when Mr. D'Anna received an email from the Davidson Group's attorney, Irwin Siegel, Esquire, which attached three pages of excerpts from the IP Agreement and the PBC Operating Agreement indicating that decisions with respect to the Peter Coppola trademark must be unanimous among the managers of Peter Coppola Beauty LLC.  A true copy of Mr. Siegel's March 19, 2014 email was introduced into evidence at the evidentiary hearing and is attached hereto as Exhibit "C."  Up until March 19, 2014, Mr. D'Anna was operating under the good faith assumption, based upon assurances he had been given by Mr. Coppola and Mr. Fisher, that Mr. D'Anna had the authority to fully settle this lawsuit on behalf of Peter Coppola.  The prior emails from Mr. D'Anna to counsel for Defendants are irrelevant because they are predicated on the good faith but mistaken belief that Peter Coppola still owned the trademark and had the sole authority to agree to the terms of the proposed settlement.  At the time of negotiations with Defendants, neither Mr. D'Anna nor Mr. Coppola understood that the trademark no longer belonged to Mr. Coppola or that the IP Agreement additionally involved an assignment of the rights to certain damages derived from this lawsuit.  Mr. Coppola cannot sell or contract away something he does not own.

      The Magistrate's Recommendation begins the "Discussion" with "to determine whether an enforceable settlement agreement exists in this case, the Court must determine two legal questions: first, whether the attorney had 'clear and unequivocal authority' to enter into a binding agreement on behalf of his client, and second, whether a binding agreement was reached. *See Vital Pharmaceuticals, Inc. v. S.A.N Nutrition Corp*., 2007 WL 1655421, *4 (S.D. Fla. June 6, 2007)."  Notably, the discussion introduction does not consider the implications of the party

plaintiff/client not having the proper actual authority to enter into a settlement agreement. The Recommendation states that "any disputes between Plaintiff and his partners Motion to Enforce." However, that statement completely overlooks the fact that Mr. Coppola essentially agreed to sell something he did not own. How can Mr. Coppola grant Casaro a license to a trademark to which he no longer owns the licensing rights?

As pointed out by Mr. D'Anna during the evidentiary hearing, there are multiple provisions which the Defendants included in their "Draft" proposed licensing agreement which are essential terms to any license agreement and are terms to which Mr. Coppola cannot agree because they are not true. A true copy of Defendants' proposed "Draft" license agreement is attached hereto as Exhibit "D." Specifically, the very first paragraph of Recitals included in Defendants' "Draft" license agreement states

> WHEREAS, **Licensor is the owner of the trademark, PETER COPPOLA**, for goods and services, including hair care preparations, namely, shampoos, conditioners, oils, lotions, nourishers; hair styling preparations, namely, pomades, hair spray, mousse, hair gel, foam, glaze, texturizing jelly, hair color, hair color removers, hair rinses and hair relaxers (collectively "Hair Care Products"), which was registered in the U.S. Patent and Trademark Office under Registration Number 3,287,456 (hereinafter referred to as the "Trademark"); (emphasis supplied).

Moreover, the "Draft" license agreement includes an entire section of "Warranties by Licensor" which Mr. Coppola cannot warrant:

> 6.   Warranties by Licensor. Licensor warrants and promises that he holds the exclusive right, title, interest and ownership in and to the Trademark and all formative variations thereof, and that he has the exclusive right to license the Trademark. Licensor further warrants and promises that he has the vested authority to enter into this Agreement, and that there are no other persons or entities who have a right that is superior in interest to that of Licensor in and to the Trademark or any formative variations thereof, or whose permission or authorization is required in order for Licensor to convey to Licensee the rights herein. Licensor

8

>warrants and promises that he is under no obligation to any person or entity to transfer or assign any interest he may have in the Trademark or any formative variations thereof. During the term of this Agreement, Licensor shall retain all rights and interests he may have in the Trademark and all formative variations thereof and shall not transfer or assign his rights to any person or entity except upon the express condition that this Agreement shall survive such transfer or assignment and that Licensee's rights herein shall not be encumbered or hindered in any manner as a result thereof. In the event that Licensor elects or decides to sell his rights and interests in the Trademark and all formative variations thereof, Licensor shall offer Licensee an opportunity to purchase or otherwise obtain those rights.

All of the aforesaid "warranties" proposed by the Defendants are directly inconsistent with the actual state of affairs and the terms of the IP Agreement and PBC Operating Agreement. More importantly, the warranties, which are factually inaccurate, are essential elements to a licensing agreement because the licensor must own the rights to the trademark in order to grant a licensee the right to use the trademark. Because there was no meeting of the minds (due to a mutual mistake of fact) as to the essential term of Mr. Coppola's ownership of the trademark, there cannot be an agreement.

Furthermore, as set forth in the PCB Operating Agreement, Mr. Coppola does not have any legal authority to bind Peter Coppola Beauty LLC. Alan Fisher is the voting manager on behalf of the Beauty Group and Karen Davidson is the voting manager on behalf of the Davidson Group and all decisions of Peter Coppola Beauty LLC must be unanimous. *See* Exhibit B at p. 11, § 6.1.

**<u>Peter Coppola's Good Faith Mistake as to His Authority to Fully Settle This Lawsuit Constitutes a Mutual Mistake of Fact Giving Rise to a Voidance of the Purported Settlement Agreement.</u>**

In negotiating a proposed settlement of the current lawsuit, both the Plaintiff's counsel and the Defendants' counsel were operating under the mistaken position that Peter Coppola

9

owned the rights to licensing of the "Peter Coppola" trademark and that he had the sole authority to settle this lawsuit without consultation.[1] This mistake of fact as to his ownership of the rights to the "Peter Coppola" trademark and Mr. Coppola's exclusive right to settle the lawsuit without voting approval of the managers of Peter Coppola Beauty LLC constitutes a basic assumption on which the settlement agreement was made. According to Florida courts, "a mutual mistake affecting the basic assumption on which the contract was made may require a voidance of the contract…" *Rawson v. UMLIC VP, L.L.C.*, 933 So. 2d 1206 (Fla. 1st DCA 2006) (citing 27 Richard A. Lord, *Williston On Contracts*, § 70:69, at 415 (2003); 13 Am.Jur.2d Cancellation of Instruments §§ 27, 29 (2006)). The remedy of rescission is available where "the mistake is mutual and the fact is of the essence of the contract." *Keystone Creations, Inc. v. City of Delray Beach*, 890 So. 2d 1119 (Fla. 4th DCA 2004) (citing *Pendleton v. Witcoski*, 836 So. 2d 1025, 1026 (Fla. 1st DCA 2002). The parties' mutual mistake as to the ownership and rights concerning the "Peter Coppola" trademark is evidenced by the above-referenced warranties and recitals included in the Defendants' counsel's proposed "Draft" license agreement. *See also E.B. Sherman, Inc. v. Mirizio*, 556 So. 2d 1143 (Fla. 3d DCA 1989) (granting rescission based on mutual mistake where one party contracted to sell his rights to be a Florida sales representative of certain manufacturers, and then later found out the rights he sold were nontransferable).

Furthermore, the Florida Supreme Court has analyzed a line of cases where the court granted equitable relief on the basis of unilateral mistake. *Maryland Cas. Co. v. Krasnek*, 174 So. 2d 541, 543 (Fla. 1965)(citing *Voss v. Forgue*, 84 So.2d 563 (Fla.1956); *Wicker v. Board of Public Instruction of Dade Cty.*, 106 So. 2d 550 (Fla. 1958); *Crosby v. Andrews*, 61 Fla. 554, 55

---

[1] While the parties' attorneys were not aware of Peter Coppola's lack of ownership of the trademark, the Defendants, themselves knew that the Davidson Group had to approve any settlement agreement and licensing agreement because Yosef Davidson told them so on multiple occasions, which was Mr. Davidson's testimony at the evidentiary hearing on April 17, 2014.

So. 57 (1911)). The *Krasnek* court described the *Crosby* case as noteworthy and analyzed the holding:

> There, the board of trustees of a church sought to cancel a deed by which they had conveyed certain church property, on the ground that they had by mistake included land which had previously been conveyed to another grantee (one of their number, incidentally). In granting rescission, the court said, 55 So. at p. 63:
>
> 'A deed of conveyance may be rescinded or cancelled for a negligent mistake of fact that is unilateral where the negligence is not a breach of legal duty, and the mistake is material and made under circumstances that render it inequitable for the other party to have the benefit thereof, even though he did not by commission or omission contribute to the mistake, and the parties were dealing at arm's length and on equal footing.'
>
> *Krasnek*, 174 So. 2d at 543 (quoting *Crosby*, 55 So. At 63).

The *Krasnek* court went on to analyze 12 Am.Jur., Contracts, sec. 133, and quoted:

> 'Clearly, a unilateral mistake in the making of an agreement, of which the other party is entirely ignorant and to which he in no way contributes, will not affect the agreement or afford ground for its avoidance or rescission, *unless it is such a mistake as goes to the substance of the agreement itself*.' (Emphasis added by Florida Supreme Court).

*Krasnek*, 174 So. 2d at 544.

Similarly, Mr. Coppola had, by mistake, agreed to convey something (the trademark) that had already previously been conveyed to another grantee (Peter Coppola Beauty, LLC). Mr. Coppola's mistake was material to the transaction and the "mistake goes to the substance of the agreement itself." *See Krasnek*, 174 So. 2d at 544 quoting 12 Am.Jur., Contracts § 133.

In an Eleventh Circuit case applying Florida law to a mistake of fact situation, the Eleventh Circuit reasoned:

> The first requirement—that a mistake "go[ ] to the substance of the agreement"—is compelled by the rule that a meeting of the minds must occur in order to create a contract. Where one party

11

> misunderstands, or otherwise makes a mistake that goes to the substance of the agreement into which it enters, no meeting of the minds occurs, and thus, no contract exists. *See Langley v. Irons Land & Dev. Co.*, 94 Fla. 1010, 114 So. 769, 771 (1927). Thus, as Florida courts have interpreted the standard, a mistake may be found to "go[ ] to the substance of the agreement" where, among other circumstances, an employee of a party enters into a contract or releases another party from a contract under the mistaken belief that he is authorized to do so or that *1292 the contract pertains to something other than it does.

*Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1291-2 (11th Cir. (Fla.) 1998).

Like the example set forth by the *Roberts & Schaefer* court, Mr. Coppola's mistake went to the substance of the agreement and he was under the "mistaken belief that he is authorized to do" something that he was actually not authorized to do. *See Id*.

The *Roberts & Schaefer* court went on to further analyze Florida law, citing the *Krasnek* case and reasoning:

> The second factor that must be satisfied in order to receive relief under the unilateral mistake doctrine requires the party that made the mistake to demonstrate that the error did not result from an inexcusable lack of due care. Florida courts have interpreted this standard generously to the benefit of the erring party. In *Maryland Cas. Co. v. Krasnek*, 174 So.2d 541, 543 (Fla.1965), for example, the Supreme Court of Florida considered a case where an insured submitted a claim to his carrier and the insurance company issued a check to the insured. As it turned out, however, the insured had allowed his policy to lapse. When the insurance agency discovered its error, it stopped payment on the check. The formerly insured individual instituted suit. The Supreme Court of Florida held that it was appropriate to apply the unilateral mistake doctrine under the circumstances. Noting that "mistakes do not ordinarily result from the exercise of due care," the court concluded that "this kind of mistake, whether by clerical error, bad communications, or otherwise," did not amount to inexcusable lack of care sufficient to prohibit application of the unilateral mistake doctrine. *Id*.
> *Roberts & Schaefer*, 152 F.3d at 1293.

Mr. Coppola's mistaken understanding was clearly a result of "bad communications" which would have been testified to had Mr. Fisher been available to testify on April 17, 2014. Mr.

12

Coppola's understanding was that Mr. Fisher had assured him that he could settle this lawsuit. A misunderstanding arose in that the parties and attorneys to this lawsuit and settlement negotiations knew that a renewed license agreement was a condition of any settlement of the lawsuit; however, Mr. Fisher and Mr. Davidson did not realize that Mr. Coppola was negotiating a prospective license agreement, but rather were operating under the assumption that the settlement would only be for past transgressions which gave rise to the lawsuit in the first place.

The facts of this case, namely Mr. Coppola's mistaken lack of ownership of the trademark which is the subject of a renewed license agreement, clearly give rise to either a mutual mistake of fact or unilateral mistake of fact which directly results in the need for rescission of any potential contract that may have been created.

### Neither Peter Coppola nor His Counsel had Actual Authority to Enter Into a Binding Settlement Agreement

During the April 17, 2014 hearing, the Magistrate Judge made much ado with respect to apparent versus actual authority, but interestingly, did not address the issue as to whether the Plaintiff had actual authority to enter into a settlement agreement. The general principals of agency and apparent and actual authority should apply. In a situation in which a partner of a company purports to have authority to make a certain decision even though the decision is restricted by the company's operating agreement, the following analysis is applicable:

> Thus, even if a general partner's actual authority is restricted by the terms of the partnership agreement, the general partner possesses the apparent authority to bind the partnership in the ordinary course of partnership business or in the business of the kind carried on by the partnership, unless the third party "knew or had received a notification that the partner lacked authority." *Id*. "Knowledge" and "notice" under FRUPA are defined in section 620.8102. That section provides that "[a] person knows a fact if the person has actual knowledge of the fact." § 620.8102(1), Fla. Stat. (2000). Further, a third party has notice of a fact if that party "(a) [k]nows

13

> of the fact; (b) [h]as received notification of the fact; or (c) [h]as reason to know the fact exists from all other facts known to the person at the time in question." § 620.8102(2), Fla. Stat. (2000). Finally, under section 620.8303 a partnership may file a statement of partnership authority setting forth any restrictions in a general partner's authority.

*RNR Investments Ltd. P'ship v. Peoples First Comm. Bank*, 812 So. 2d 561 (Fla. 1st DCA 2002). The *RNR Investments* case further states that "Absent actual knowledge, third parties have no duty to inspect the partnership agreement or inquire otherwise to ascertain the extent of a partner's actual authority in the ordinary course of business, ... even if they have some reason to question it." *Id*. at 566 (citing *The Revised Uniform Partnership Act: The Reporters' Overview*, 49 Bus. Law 1, 31-32 (1993)). Notably, in the present case, the Defendants did have actual knowledge that Mr. Coppola did not have actual authority to make decisions with respect to the "Peter Coppola" trademark, as testified to by Mr. Davidson at the April 17, 2014 evidentiary hearing.

While the Magistrate Judge did not directly address this issue, it is important to note that it is preposterous to think that Mr. Coppola had any actual or apparent authority to bind Peter Coppola Beauty LLC to any prospective license agreement through the settlement of this lawsuit. According to Defendants' counsel's arguments at the April 17, 2014 hearing, while the parties were negotiating and when they reached an alleged settlement on March 6, 2014, they were not even aware of the existence of Peter Coppola Beauty LLC[2]. There are no allegations that Mr. Coppola ever purported to be an agent of Peter Coppola Beauty LLC. In fact, Mr. Coppola testified that he did not even realize/remember that Peter Coppola Beauty LLC had officially been formed at the time of the purported settlement agreement. Furthermore, Mr. Coppola is a member of Peter Coppola Beauty LLC but he is not a manager and has no decision making

---

[2]   Although, the Defendants, themselves, were aware that the Davidson Group had to be involved in any licensing decisions as of October 2013 per Mr. Davidson's meeting with Mr. Lubliner and Mr. Viccaro.

power.  *See* Exhibit B at pp. 4-5; p. 11 § 6.1.  Alan Fisher is the Peter Coppola Beauty LLC manager designated by the Beauty Group.  *See* Exhibit B at p. 3; p. 11 § 6.1.  Furthermore, an agency relationship only applies where a purported agent is acting within the course and scope of his authority of the company/principal.  *See Compania de Elaborados de Cafe v. Cardinal Capital Management, Inc.,* 401 F. Supp. 2d 1270 (S.D. Fla. 2003).  Clearly, settling a lawsuit is not part of the course and scope of the business of Peter Coppola Beauty LLC.

## Conclusion

Because the Magistrate Judge seemed to have overlooked the fact that Mr. Coppola cannot contract to sell or convey something he does not own or otherwise grant certain rights to a third party if he does not hold the rights he seeks to convey, the Recommendation should be rejected. Mr. Coppola's lack of ownership of the "Peter Coppola" trademark is a mutual mistake of fact as to a material term and should result in rescission of any contract that was allegedly created. Accordingly, the Court should deny Defendants' Motion to Enforce Settlement Agreement, or alternatively, the Court should hold its own evidentiary hearing to adjudicate Defendants' Motion to Enforce Settlement Agreement [Doc. 44].

Dated: April 24, 2014.

                                  Respectfully submitted,

                                  /s/ Ronald E. D'Anna
                                  Ronald E. D'Anna, Esquire
                                  Florida Bar No. 357 405
                                  red@mdd-law.com
                                  McClosky, D'Anna & Dieterle, LLP
                                  2101 N.W. Corporate Boulevard, Suite 400
                                  Boca Raton, Florida  33431
                                  Tel:   (561) 368-9200
                                  Fax: (561) 395-7050
                                  E-Service: legalservice@mdd-law.com
                                  *Attorney for Plaintiff, Peter Coppola*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered by designated E-mail on this 24th day of April, 2014, to: **Matthew S. Nelles, Esquire, Vanessa M. Serrano Esquire**, *Counsel for Casaro Labs, Ltd., Samuel Lubliner and Rodney Viccari,* Broad & Cassel, One Financial Plaza, Suite 2700, 100 S.E. 3rd Avenue, Fort Lauderdale, FL 33394, Tel: (954) 764 - 7060, Fax: (954) 761 - 8135, E-mail: mnelles@broadandcassel.com; vserrano@broadandcassel.com.

/s/ Ronald E. D'Anna
Ronald E. D'Anna, Esquire

H:\LIBRARY\12014001\PLEADING\OBJECTIONS TO MAGISTRATE RECOMMENDATIONS 4-21-14.DOCX