UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  12-81163-CIV-MARRA/HOPKINS

| | |
|---|---|
| PETER COPPOLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CASARO LABS, LTD., | ) |
| SAMUEL LUBLINER, | ) |
| RODNEY VICCARI,  and | ) |
| STANCE BEAUTY LABS, LLC, | ) |
| | ) |
| Defendants. | ) |
| _____/ | |

**PLAINTIFF, PETER COPPOLA'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION
ON MOTION TO ENFORCE SETTLEMENT AGREEMENT [Doc. 59]**

Plaintiff, Peter Coppola ("Coppola"), by and through his undersigned counsel, hereby replies to Defendants' Response in Opposition to Plaintiff's Objections to Report and Recommendation on Motion to Enforce Settlement Agreement [Doc. 59] ("Response") filed on April 29, 2014, and states as follows:

**Introduction**

The Defendants' Response raises several red herrings and fails to acknowledge the basic principal that, regardless of whether it was a mistake, misunderstanding, forgetfulness, misinformation or otherwise, the fact remains that Coppola does not own the trademark that he allegedly contracted with the Defendants for a licensing agreement.  Coppola cannot commit to license a trademark he does not own.

1.     __Reply to Defendant's Unclean Hands Argument__

With respect to Defendants' argument that Coppola cannot claim a mistake of fact because he had unclean hands, there is really no evidence of unclean hands on the part of Coppola.  Coppola did not have copies of the documents that were requested.  As stated at the hearing on April 17, 2014, when Coppola's counsel, Ronald E. D'Anna communicated with Mr. Coppola's business partner, Alan Fisher, as to whether any relevant documents existed related to the trademark, Mr. Fisher represented to Mr. D'Anna that the documents were confidential and that Mr. Coppola had authority to settle this lawsuit.  Mr. Coppola testified that he believed he had full authority to settle this lawsuit.  As stated at the evidentiary hearing, it was not a March 18, 2014 email from Irwin Siegel, Esquire to Mr. D'Anna which attached excerpts of the LLC Operating Agreement and the IP Purchase Agreement that Mr. D'Anna realized there was an issue as to Mr. Coppola's authority to settle this lawsuit and enter into a prospective license agreement.  Mr. D'Anna passed along this information to counsel for Defendants as he became aware of it.

Additionally, Mr. D'Anna did not receive full copies of the LLC Operating Agreement and the IP Purchase Agreement until the day prior to the April 17, 2014 hearing.  Upon receipt of the documents from counsel for one of Mr. Coppola's business partners, counsel for Coppola served Defendants' counsel with an Amended Response to Defendant, Casaro Labs' Second Request for Production on counsel for Defendants which included an updated response to Request No. 1, 2 and 3.  Neither Mr. Coppola nor Mr. D'Anna was hiding the ball with respect to discovery.  Rather, they were operating under a series of misunderstandings as to the state of affairs.

Regardless, the actions of Mr. Coppola do not rise to the level of unclean hands.  Further, what could Mr. Coppola have possibly gained by purposely being untruthful as to the status and execution of the LLC Operating Agreement and IP Purchase Agreement and his authority to enter into a settlement?  Mr. Coppola would not gain anything by entering into a settlement agreement knowing he did not have the authority to do so.  Mr. Coppola made an arm's length and bona fide business transaction with the principals/managers of Peter Coppola Beauty LLC, under the business advice and negotiations of Alan Fisher.  Mr. Coppola relied upon Mr. Fisher to make the business deals on behalf of their joint company, Beauty Investors Group, LLC.  While Mr. Coppola did sign the agreements, he was not intricately involved in the negotiation process.

Simply put, Mr. Coppola had nothing to gain by entering into a settlement agreement without authority and a license agreement for something to which he does not own the rights.  Of course, any sort of purposeful scheming giving rise to unclean hands with respect to his transactions with the Defendants, would likely result in disputes with his new business partners. Why would he do that?

## 2.     Reply to Defendant's Mistake of Fact Argument

Even though the term "mistake of fact" was not directly quoted in Coppola's moving papers prior to the April 17, 2014 hearing, the facts giving rise to the mistake of fact were the glaring issue raised in both Plaintiff's Response to Defendant's Motion to Enforce Settlement Agreement (Doc. 49) and in Defendant's Supplemental Response (Doc. 51).   As soon as it became evident to Mr. Coppola and his counsel that Mr. Coppola no longer owned the rights to his trademark and had to get certain approval with respect to a settlement of this case, Mr.

D'Anna informed counsel for Defendants of the situation which had come to light for Mr. D'Anna well after the fact.

As stated throughout Plaintiff's Supplemental Response (Doc. 51), it is a simple tenement of contract law that one cannot sell or transfer something that one does not own.  Defendants desire for Mr. Coppola to sign an agreement stating that he is the owner of and the exclusive holder of rights to the Peter Coppola trademark, and Mr. Coppola cannot sign such a statement because it is not true.  Regardless of the state of affairs and the mistakes and misunderstandings that occurred, Mr. Coppola contractually sold his ownership and control of the Peter Coppola trademark on or about June 1, 2013; therefore, he literally cannot sell licensing rights to the same trademark in May 2014 because they are no longer his rights.

The fact remains that the IP Purchase Agreement, with an Effective Date of January 25, 2013, includes the following terms:

> 1. <u>Purchase And Sale; Purchase Consideration</u>.
> (a) Purchase and Sale. Seller hereby sells, assigns and transfers to Purchaser contemporaneously with the execution of this Agreement (the "Closing"), all rights, title and interests in and to the Intellectual Property[1] and any and all damages obtained by the Plaintiff in the Litigation[2] that are found to accrue from and after the Effective Date (collectively, the "Purchased Assets"). Seller shall retain all judicial awards for damages arising from the Litigation prior to the Effective Date, and such judicial awards for damages shall not be a part of the Purchased Assets.
> …

---

[1]    The IP Purchase Agreement defines "the Intellectual Property" as "certain intellectual property consisting of any trademark, service mark, registration thereof or application for registration therefore, trade name, license, invention, patent, patent application, trade secret, trade dress, know-how, copyright, copyrightable materials, copyright registration, application for copyright registration, software programs, data bases, the "Peter Coppola" name and all abbreviations and derivations thereof, URLs (Uniform Resource Locators), and any other type of proprietary intellectual property right, and all embodiments and fixations thereof and related documentation, registrations and franchises and all additions, improvements and accessions thereto, and in all such cases, which is owned or licensed or filed by the Seller or used or held for use in the Business, whether registered or unregistered or domestic or foreign".

[2]    The IP Purchase Agreement defies "the Litigation" as "the trademark infringement litigation currently pending in the United States District Court, Southern District of Florida entitled *Peter Coppola v. Casaro Labs, Ltd., Samuel Lubliner, and Rodney Viccari* and bearing case no. 9.12-cv-81163-KAM".

(c) <u>Assignment Documents; Closing Conditions</u>.

…

At the Closing, the Intellectual Property shall be transferred by Seller to Purchaser free and clear of any and all liens, options, rights of first refusal, encumbrances, mortgages, security interests, pledges, judgments, claims, equities and other third party rights, restrictions or charges of any kind or nature whatsoever, other than the security interest in the Intellectual Property given by the Seller under that certain Settlement Agreement, Mutual Release, and Covenant Not to Sue made by and between Harvey Bloch and the Seller dated March 1, 2013…

Clearly, the purpose and intent of the IP Purchase Agreement was to transfer all rights in the trademark from Peter Coppola, individually, to an LLC controlled by certain managers and not by Coppola.

The LLC Operating Agreement includes the following terms:

6.1 Management of the Company.

(a) The Company shall be a "manager-managed" limited liability company for purposes of the Act. As of the Effective Date, the Managers are Alan Fisher as the initial Coppola Manager and Karen Davidson as the initial Davidson Manager. The Managers shall have the exclusive right to manage the business of the Company and are hereby authorized to take any action of any kind and to do anything and everything both Managers deem reasonably necessary in conjunction therewith. Each action, whether or not discretionary, and every decision to be made by the Managers hereunder shall require the unanimous consent of the Managers.

Mr. Coppola is not a voting manager, and all decisions require unanimous consent of the managers, so Mr. Coppola did not have actual authority to bind Peter Coppola Beauty LLC. In fact, the manager of the Davidson Group, Karen Davidson, did not approve any settlement or license agreement.

**3.    Reply to Defendant's Authority Argument**

In reply to Defendants' third and fourth argument related to authority issues, Coppola re-states his reply set forth in section 2 above. With respect to the Defendants' statements related to

all the representations of Mr. Coppola and Mr. D'Anna with respect to their perceived authority to bind Mr. Coppola to a settlement agreement, both Mr. Coppola and Mr. D'Anna had been misinformed.  They believed that they had "full authority to negotiate a settlement;" however, they did not actually have the authority they believed they had.  Defendants continue to attempt to argue that Mr. Coppola had apparent authority to bind Peter Coppola Beauty LLC, and possibly actual authority.  Just because the company that Mr. Coppola is a part of, Beauty Investors Group, LLC, owns a majority of Beauty Investors Group, LLC (65%), does not have any bearing on Mr. Coppola's actual authority to bind Peter Coppola Beauty LLC.  The LLC Operating Agreement makes it clear that Karen Davidson is the voting manager on behalf of The Davidson Group LLC and Alan Fisher is the voting manager on behalf of Beauty Investors Group, LLC.  *See* LLC Operating Agreement at § 6.1 and Exhibit A.  Defendants improperly stated that Mr. Coppola owns the majority interest, but Mr. Coppola is not the only principal of the company that owns the majority interest.  Alan Fisher is a joint member/manager of Beauty Investors Group, LLC.  It is clear from the plain language of the LLC Operating Agreement that the members and managers of Peter Coppola Beauty LLC intended for Mr. Coppola to not be a voting manager.  Further, the agreement does not reference any participation by Mr. Coppola whatsoever in decision-making for the company.  Mr. Coppola is part of the new company since it involves the use of his name; however, he is not an active manager or business decision-maker for the company.  That is Mr. Fisher's role on behalf of Beauty Investors Group, LLC.

Additionally, the Defendants allege that by virtue of the name of the company, Peter Coppola Beauty LLC, Mr. Coppola had authority to bind the company.  In fact, at the time of negotiations for settlement from the January 2014 mediation through the March 2014 email exchanges between counsel for the parties, the Defendants were not aware of the name of the

company: Peter Coppola Beauty LLC. Rather, the Defendants knew that Mr. Coppola was involved in a new business venture which included Karen Davidson, Yosef Davidson and Alan Fisher. The name of the company is immaterial as to actual or apparent authority of Mr. Coppola.

Defendants make much ado as to an email from Yosef Davidson to Sam Lubliner that stated "Understood – all offers are officially off the table and this is out of my hands now." While Mr. Davidson did have several communications with the Defendants with respect to a continued licensing relationship, he is not a manager of Peter Coppola Beauty LLC. Mr. Davidson does not have authority to bind Peter Coppola Beauty LLC. Karen Davidson is the manager and voting interest member of Peter Coppola Beauty LLC on behalf of The Davidson Group, LLC. Based on the March 19, 2014 email from Karen Davidson's counsel, Mr. Siegel to Mr. D'Anna, which was forwarded to counsel for Defendants, it is clear that Ms. Davidson is the objecting party to the settlement and further license agreement, and Ms. Davidson is one of the two people who must approve all decisions for Peter Coppola Beauty LLC by unanimous consent.

**4.      Peter Coppola Beauty LLC is Not a Party to this Lawsuit and to Impute Obligations on the Company is a Violation of Due Process**

To the extent Defendants claim that Peter Coppola Beauty LLC is bound by the acts of Mr. Coppola, this Court does not have jurisdiction to bind the company, and the company was denied due process rights. Significantly, the Magistrate's Report and Recommendation on Defendants' Motion to Enforce Settlement Agreement (Doc. 57) ("R&R") does not attempt to bind Peter Coppola Beauty LLC. The R&R only deals with Mr. Coppola's authority to settle the lawsuit. The United States Supreme Court held "It is a principle of general application in

Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940)).  Mr. D'Anna did not represent the interests of Peter Coppola Beauty LLC nor The Davidson Group LLC nor Karen Davidson nor Yosef Davidson; therefore, this Court does not have jurisdiction over any of those parties and cannot bind them.

Additionally, Peter Coppola Beauty LLC, The Davidson Group, LLC, Beauty Investors Group, LLC, Alan Fisher and Karen Davidson did not receive proper notice of the April 17, 2014 evidentiary hearing and did not have an opportunity to be heard.  Actually, Coppola put the Court on notice of Ms. Davidson's and Mr. Fisher's unavailability for the April 17, 2014 hearing by way of Plaintiff's Motion to Continue Evidentiary Hearing Set for April 17, 2014 (Doc. 53) which was denied (Doc. 54).  This Court cannot bind Peter Coppola Beauty LLC to any agreement without an opportunity for the managers and controlling members of the company to be heard.  *See e.g.*, *McKusick v. City of Melbourne*, Fla. 96 F.3d 478 (11th Cir. (Fla.) 1996) ("There may be other constitutional principles, such as due process, that would prevent a state court from issuing an injunction that purported to bind nonparties who have no notice or opportunity to be heard prior to the issuance of the injunction."); *Moretto v. Staub*, 370 So.2d 1220, 1221 (Fla. 3d DCA 1979) (judgment entered against nonparty violates due process).

## CONCLUSION

The arguments raised by the Defendants in their Response are all immaterial to the fact that the Plaintiff, Peter Coppola, does not own the trademark and the rights associated therewith, which was the primary subject of the settlement agreement.  Furthermore, this Court does not have jurisdiction to bind a nonparty, Peter Coppola Beauty LLC, to any agreement; Peter

Coppola Beauty LLC has not been served with process in this action or otherwise named in this action for due process purposes.  Peter Coppola Beauty LLC did not have proper notice or the opportunity to be heard at the April 17, 2014 hearing which gave rise to the Magistrate's Report and Recommendations, and therefore, cannot be bound by the ruling which was derived from that evidentiary hearing.  Accordingly, the Court should sustain Coppola's Objections to the Magistrate's R&R and enter an Order Denying Defendants' Motion to Enforce Settlement Agreement (Doc. 44).

Dated: May 2, 2014.

Respectfully submitted,

/s/ Kristin J. Mentzer
Ronald E. D'Anna, Esquire
Florida Bar No. 357405
red@mdd-law.com
Kristin J. Mentzer, Esquire
Florida Bar No. 56352
kjm@mdd-law.com
McClosky, D'Anna & Dieterle, LLP
2101 N.W. Corporate Boulevard, Suite 400
Boca Raton, Florida  33431
Tel:  (561) 368-9200
Fax: (561) 395-7050
E-Service: legalservice@mdd-law.com
*Counsel for Plaintiff, Peter Coppola*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered by designated E-mail on this 2nd day of May, 2014, to:  **Matthew S. Nelles, Esquire, Vanessa M. Serrano Esquire**, *Counsel for Casaro Labs, Ltd., Samuel Lubliner and Rodney Viccari,* Broad & Cassel, One Financial Plaza, Suite 2700, 100 S.E. 3rd Avenue, Fort Lauderdale, FL 33394, Tel: (954) 764 - 7060, Fax: (954) 761 - 8135, E-mail: mnelles@broadandcassel.com; vserrano@broadandcassel.com.

/s/ Kristin J. Mentzer
Kristin J. Mentzer, Esquire

H:\LIBRARY\12014001\PLEADING\REPLY TO CASARO'S RESPONSE TO OBJECTIONS TO MAGISTRATE RECOMMENDATIONS 4-21-14.DOCX